UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-04099 JAK (KSx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | Max Hattler v. Lorin Ashton, et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT (DKT. 27)**

## I. Introduction

Max Hattler ("Plaintiff"), an artist and experimental filmmaker, brought this action against Lorin Ashton ("Ashton"), an electronic music artist who is known as "Bassnectar."[1] Complaint, Dkt. 1. The Complaint advanced the following claims: (i) copyright infringement; (ii) violation of Cal. Civ. Code § 987; and (iii) violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202. The premise of each claim is the allegation that, without the prior approval of Plaintiff, Ashton used Plaintiff's artwork during his concerts. *Id.* On August 31, 2016, Plaintiff filed a First Amended Complaint ("FAC"). Dkt. 13. It named two new defendants -- Amorphous Music, Inc., and Bassnectar Touring, Inc. *Id.*

Defendants moved to dismiss the FAC. Dkt. 17. That motion was granted on October 27, 2016. Dkt. 25. On November 21, 2016, Plaintiff filed a Second Amended Complaint ("SAC"). Dkt. 26. It advances two causes of action -- copyright infringement and violation of the DMCA, 17 U.S.C. §§ 1201-02.

On December 21, 2016, Defendants moved to dismiss the SAC in part ("Motion"). Dkt. 27. Plaintiff opposed ("Opposition," Dkt. 30) and Defendants replied ("Reply," Dkt. 31). A hearing on the Motion was held on March 20, 2017 and the matter was taken under submission. For the reasons stated in this Order, the Motion is **GRANTED**.

## II. Factual and Procedural Background

### A. General Allegations

In August 2013, an agent for Bassnectar contacted Plaintiff and requested permission to incorporate Plaintiff's work into Bassnectar's live concert performances. SAC at 2-3. Plaintiff declined. *Id.* at 3. Bassnectar nonetheless incorporated portions of two of Plaintiff's works "Sync" and "1923 aka Heaven" (the "Works") into his performances. *Id.* He also used the Works in certain online marketing. *Id.* at ¶ 11. The Works were published before the infringement at issue, and have been submitted for registration with

---

[1] For consistency and ease of identification, Ashton will be referred to as Bassnectar in this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-04099 JAK (KSx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | Max Hattler v. Lorin Ashton, et al. | | |

the Copyright Office. *Id.* at ¶ 10.

### B. Claims in the FAC

The FAC advanced three claims. The first was for copyright infringement. FAC at ¶¶ 15-24. In support of that claim the FAC alleged that Defendants infringed Plaintiff's copyrights "by creating infringing and/or derivative works from the Subject Works and by performing the works that infringe Plaintiff's rights in the Subject Works to the public, including without limitation, through live performances and online broadcasts." *Id.* at ¶ 18. The FAC also included a request for statutory damages under Section 502(c) of the Copyright Act in an amount of up to $150,000 per infringement. *Id.* at ¶ 24.

The second claim sought relief under Cal. Civ. Code § 987. *Id.* at ¶¶ 25-30. It alleged that the Works "are original works of art," and that Defendants

> willfully, intentionally and physically defaced, mutilated, altered or destroyed, or authorized the mutilation, alteration or destruction of Plaintiff's original works of fine art by, inter alia, overlaying it with frog and other imagery, modifying the coloration, and removing elements from Plaintiff's work, and doing so without notice and in violation of Plaintiff's rights.

*Id.* at ¶¶ 26-27.

The third claim asserted a violation of the DCMA, 17 U.S.C. §§ 1202 *et seq*. *Id.* at ¶¶ 31-37. It alleged the following:

- Defendants knowingly and intentionally removed Plaintiff's attribution and copyright management information ("CMI") from the Works and/or altered the attribution and CMI on the Works to reflect that Ashton and/or another party authored or owned the Works;
- Defendants distributed the mislabeled and misattributed copies of these Works to the public online and through live performance;
- Defendants removed and/or altered the attribution and CMI and distributed the mislabeled and misattributed copies with knowledge that the CMI had been removed or altered without authority;
- Defendants distributed and publicly displayed the infringing copies knowing that the CMI had been removed or altered without authority, and having "reasonable grounds to know, that the conduct would induce, enable, facilitate, or conceal an infringement of certain rights under this title";
- Certain of the copies included alterations and manipulations by Defendants that appear to attribute or associate one or more of the Works to Ashton; and
- Defendants affixed frog and other imagery to the Works to attribute the unauthorized copies to one or more of the Defendants.

*Id.* at ¶¶ 32-35.

### C. Order Granting Motion to Dismiss the FAC

On October 27, 2016, an Order issued that granted in part and denied in part a motion to dismiss the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-04099 JAK (KSx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | Max Hattler v. Lorin Ashton, et al. | | |

FAC. Dkt. 26. The request for statutory damages and attorney's fees for copyright infringement was dismissed because the alleged infringement began prior to June 9, 2016, the effective date of the copyright registration. *Id*. at 1-2. The claim for violation of Cal. Civ. Code § 987 was dismissed because that statute does not apply to digital art. *Id*. at 2. The claim for violation of the DMCA, 17 U.S.C. § 1202(a) was dismissed because the FAC did not include sufficient allegations to form a plausible claim that Defendants added false copyright management information to the Works. *Id*. at 2-3. However, the Order found that the allegations to support a claim under the DMCA, 17 U.S.C. § 1202(b), were sufficient. That statute provides relief for the removal of the name of an author of a work "when it has been 'conveyed in connection with copies of' the work." *Id*. at 3. Further, the Order found that scienter had been adequately pleaded because the Complaint alleged that Defendants had requested permission from Plaintiff to use his work, Plaintiff had declined to grant it, and Defendants nevertheless used the work without making any attribution. *Id*.

    **D.**    **Claims in the SAC**

The SAC presents two claims for relief. The first is for copyright infringement. That claim is not challenged by the Motion. The second claim alleges a violation of the DCMA, 17 U.S.C. §§ 1201; 1202(a)-(b). The following allegations in the SAC are added to those made in the FAC:

- The Works bore Plaintiff's name and author information, as well as a title and credits;
- Plaintiff's name and the title of the Works was included in the filenames for the Quicktime, .JPEG, and other file formats in which the Works were available;
- Plaintiff's name and the title of the Works are included on the film pages on Plaintiff's website and on his YouTube and Vimeo pages;
- The end credits of the Works identify Plaintiff as the author;
- Defendants removed all of the above identifying information from the Works when distributing and publishing them by, *inter alia*, exhibiting them at live performances around the United States;
- Defendants intentionally added and affixed false symbols of attribution to "Sync";
- Defendants affixed frog and human body iconography to the Works that attributed the Works to Ashton and/or Defendants;
- During a live performance by Bassnectar of "Frog Song," frog iconography was displayed that was superimposed on one of the Works;
- Defendants knowingly displayed copies of the Works without CMI;
- The files for the Works were not available by lawful download at any online source; and
- Defendants circumvented the controls intended to limit access to the Works

SAC at ¶¶ 25-36.

**III.**    <u>Analysis</u>

    **A.**    **Legal Standards**

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-04099 JAK (KSx) | Date | April 20, 2017 |
| Title | Max Hattler v. Lorin Ashton, et al. | | |

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* Rather,

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*, 550 U.S. at 570]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [*Id.*] Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557.

*Id.*

*Iqbal* identifies "[t]wo working principles" that underlie the standards of Rule 12(b)(6). *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

When granting a motion to dismiss, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15. "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citations omitted). As the Supreme Court has explained:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

    **B.**    **Application**

        1.    <u>Section 1202(a)</u>

Section 1202(a) provides:

> **(a) False copyright management information**. -- No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement --
>
>     **(1)** provide copyright management information that is false, or
>
>     **(2)** distribute or import for distribution copyright management information that is false.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-04099 JAK (KSx) | | Date | April 20, 2017 |
|---|---|---|---|---|
| Title | Max Hattler v. Lorin Ashton, et al. | | | |

The statute defines "copyright management information" to include (i) the title and other information identifying a work; (ii) the name of, and other identifying information about, the author and/or copyright owner of a work; (iii) the name of, and other identifying information about, a writer, performer or director who is credited in an audiovisual work; (iv) terms and conditions for use of the work; (v) identifying numbers or symbols referring to such information or links to such information; and (vi) "[s]uch other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work." 17 U.S.C. § 1202(c).

Plaintiff argues that Defendants "unlawfully added their iconography to Plaintiff's works, attributing the works to Defendant in violation of § 1202(a)." Dkt. 30 at 3. He also contends that the "application by the violator of 'added logos'" has been held to be evidence of a violation of that provision. *Id.* at 3-4. In support of these positions he cites, *Friedman v. Live Nation Merch., Inc.*, No. 14-55302, 2016 WL 4394585, at *7 (9th Cir. Aug. 18, 2016). However, *Friedman* refers only § 1202(b), which is not at issue in this Motion.

Plaintiff cites other cases that are not controlling. Thus, *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295 (3d Cir. 2011) addresses whether CMI includes information like the name or author of a work when such information does not pertain to an "automated copyright protection or management system." *Id.* at 30. It does not involve an alleged violation of § 1202(a). In *Photographic Illustrators Corp. v. Orgill, Inc.*, 118 F. Supp. 3d 398, 407 (D. Mass. 2015), the district court held that the addition of a watermark to a copyrighted photograph does not "induce, enable, facilitate, or conceal infringement" under § 1202(a) where the party that added the watermark was unaware of any attribution obligations.

The SAC repeats the conclusory allegations that the frog and human body images superimposed over the Works "appear to attribute or associate one or more of the Subject Works" to Bassnectar and that they are "false symbols of attribution." SAC at ¶¶ 29-30. However, there are no allegations to the effect that the frog or the human body is associated with or represents Bassnectar or any of the Defendants. At the hearing, Plaintiff referred to a screenshot from Bassnectar's Facebook page. It showed a photograph of a concert at which an image of a frog was displayed on top of Sync. Ex. C to SAC. The photograph was captioned "Red Rocks 2014 -- Photo aLIVE Coverage." *Id*.

The SAC alleges that, "on information and [b]elief it is alleged that ASHTON performed a song he has titled 'Frog Song' while at the same time displaying the frog iconography superimposed on top of one of the Subject Works." *Id.* at ¶ 30. Plaintiff argues that "[t]his usage in conjunction with its context strongly suggest an attribution of authorship or at least ownership of the visuals presented by Bassnectar." Dkt. 30 at 5. This is not a logical inference sufficient to satisfy the standards that apply under Rule 12. That an image associated with the title of a song being performed by Bassnectar was superimposed on the Works and projected behind him does not lead to the reasonable inference by an observer that Bassnectar was the author of the Works. This outcome is confirmed by the absence of any non-conclusory allegation that Bassnectar himself is associated with or identified by frogs or frog imagery. For these reasons the SAC does not adequately state a claim under § 1202(a). Plaintiff was given leave to amend the FAC to attempt to state a viable claim under § 1202(a). The SAC does not include any new allegations that are either significant or non-conclusory. Because Plaintiff has had three opportunities to state his claims, there is not a sufficient basis to conclude that a fourth attempt would be successful.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-04099 JAK (KSx) | | Date | April 20, 2017 |
|---|---|---|---|---|
| Title | Max Hattler v. Lorin Ashton, et al. | | | |

    2.    <u>Section 1201</u>

Section 1201 provides, in relevant part:

> **(a) Violations regarding circumvention of technological measures.** --
>
> > **(1)(A)** No person shall circumvent a technological measure that effectively controls access to a work protected under this title. . . .
> >
> > **(2)** No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that -- **(A)** is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title . . .
>
> **(b) Additional violations**.--
>
> > **(1)** No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that -- **(A)** is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof . . .

Plaintiff argues that Defendants violated § 1201(a)(1)(A) when they downloaded the Works in a manner that circumvented the technological protections on the websites where the Works were available for streaming. Dkt. 30 at 5-6.[2] Defendants respond that the technological protections of these websites restricted downloading, but not general access. Consequently, they contend that § 1201 does not apply. Dkt. 21-1 at 8-9.

Both sides rely on *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) to support their respective positions. *Lexmark* involves an interpretation of § 1201(a)(2). *Id.* at 532. The plaintiff in *Lexmark* was a company that manufactured printers and toner cartridges. *Id.* at 530. The printers included a program called the "Printer Engine Program" that controlled a variety of functions. *Id.* In order to ensure that Lexmark printers used only Lexmark cartridges, a microchip was implanted in each of the cartridges. *Id.* If a cartridge were placed in a Lexmark printer, each would employ a publicly-available algorithm to establish an authentication code based upon data in the memory of the microchip. *Id.* If the code in the microchip matched the code in the printer, the printer would accept the cartridge and function normally. *Id.* If not, the printer would not operate. *Id.* Defendant was a competing company that sold its own microchip. It could be used by consumers to replicate the authentication code

---

[2] Plaintiff seeks judicial notice that there is software that facilitates the circumvention of protections against downloading videos that may stream online. Fed. R. Evid. 201. That request is **DENIED**. First, even assuming that judicial notice would be appropriate, whether such software is available is not relevant to the Motion. Defendants have not argued that the videos were downloaded in a manner that was proper or permitted. Further, Plaintiff has provided no evidence as to how Defendants acquired the videos. Finally, Plaintiff has not shown that this is a fact that is "generally known," or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-04099 JAK (KSx) | Date | April 20, 2017 |
|---|---|---|---|
| Title | Max Hattler v. Lorin Ashton, et al. | | |

in the Lexmark toner cartridges. As a result, they could install non-Lexmark cartridges in Lexmark printers and have the printer function, thereby circumventing the plaintiff's efforts to restrict the cartridges that could be used. *Id*. at 530-31.

Lexmark sued the defendant. It alleged that the authentication sequence was a technological measure that effectively controlled access to the Printer Engine Program. Consequently, it alleged that in creating and distributing its microchip, defendant violated § 1201(a)(2). *Id*. at 529. The Sixth Circuit rejected this argument because the code for the Printer Engine Program was readily available on the printer memory, "with or without benefit of the authentication sequence." *Id*. at 546. Based on this determination, *Lexmark* held that the authentication sequence

> may well block one form of "access" -- the "ability to . . . make use of" the Printer Engine Program by preventing the printer from functioning. But it does not block another relevant form of "access" -- the "ability to [ ] obtain" a copy of the work or to "make use of" the literal elements of the program (its code).

*Id*. at 547. To explain this analysis, the opinion provided the following analogy:

> Just as one would not say that a lock on the back door of a house "controls access" to a house whose front door does not contain a lock . . . it does not make sense to say that this provision of the DMCA applies to otherwise-readily-accessible copyrighted works.

*Id*.

Defendants cite this passage to support their position that §1202(a)(1) should not apply to the unauthorized copying of the Works because they were publicly available for streaming. Dkt. 27-1 at 9. Thus, Defendants argue that the "door" to the Works was open. However, this is not a perfect analogy. Defendants do not dispute that, in order to download the Works for their use during a concert, they were required to circumvent technology expressly designed to prevent that form of access. To extend the front and rear door analogy in *Lexmark* to the facts alleged here is not persuasive. If applied here it would require a modification -- allowing members of the public access to the locked front door of your home, does not constitute consent to their manipulating the lock in a way that allows them to enter without your permission.

Plaintiff relies on the following passage from *Lexmark* to support his position:

> [W]here the DMCA applies, the copyright protection operates on two planes: in the literal code governing the work and in the visual or audio manifestation generated by the code's execution. For example, the encoded data on CDs translates into music and on DVDs into motion pictures . . . . The copyrightable expression in the Printer Engine Program, by contrast, operates on only one plane: in the literal elements of the program, its source and object code. . . .[T]he program's output is purely functional . . . [a]nd unlike the code underlying video games or DVDs, no encryption or other technological measure prevents access to the Printer Engine Program.

Dkt. 30 at 8 (quoting *Lexmark*, 387 F.3d at 548). Unlike the Printer Engine Program in *Lexmark*, Plaintiff argues, the work here is copyrightable expression.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-04099 JAK (KSx) | Date | April 20, 2017 |
| Title | Max Hattler v. Lorin Ashton, et al. | | |

As the competing arguments presented by the parties demonstrate, it is not entirely clear how the conclusions in *Lexmark* apply to the allegations of the SAC. However, *Lexmark* provides insight into the structure of the DMCA. The decision states that, in addition to banning devices circumventing technological measures that control *access* to copyrighted works, (§ 1201(a)(1)), § 1201 also bans the use of devices that can circumvent technological measures protecting "a *right*" of the copyright holder (§ 1201(b) (emphasis added)). *Lexmark*, 387 F.3d at 545. This provision "prohibits devices aimed at circumventing technological measures that allow some forms of 'access' but restrict other uses of the copyrighted work." *Id.* (citing *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001); *United States v. Elcom Ltd.*, 203 F.Supp.2d 1111, 1120 (N.D. Cal. 2002)). These other uses include "streaming media, which permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work." *Id.* (citing *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99CV02070, 2000 WL 127311, at *1-2 (W.D. Wash. Jan.18, 2000)).

Plaintiff cites *Corley* to support his argument that "[h]aving the authority of the copyright owner to view a work does not shield defendants from liability under section 1201 if they circumvent technological protection measures prevent[ing] the downloading and alteration of the work on an alternative platform." Dkt. 30 at 7. But, *Corley* addressed a computer program that decrypted the encryption that movie studios placed on DVDs in order "to prevent the unauthorized *viewing* and copying of motion pictures." 273 F.3d at 435 (emphasis added). In contrast, the Works here were accessible for viewing to the general public. Further, *Corley* describes a distinction between § 1201(b)(1) and § 1201(a)(2):

> [A]lthough both subsections prohibit trafficking in a circumvention technology, the focus of subsection 1201(a)(2) is circumvention of technologies designed to *prevent access* to a work, and the focus of subsection 1201(b)(1) is circumvention of technologies designed to *permit access* to a work but *prevent copying* of the work or some other act that infringes a copyright.

*Id.* at 441 (emphasis in original); *see also Elcom*, 203 F. Supp. 2d at 1119 ("Congress enacted three new anti-circumvention prohibitions, Section 1201(a)(1), Section 1201(a)(2) and Section 1201(b). The first two provisions target circumvention of technological measures that effectively control *access* to a copyrighted work; the third targets circumvention of technological measures that impose limitations on the *use* of protected works.") (emphasis in original).

In support of its interpretation, *Corley* cites S.Rep. No. 105-190, at 11-12 (1998), which states:

> Although sections 1201(a)(2) and 1201(b) of the bill are worded similarly and employ similar tests, they are designed to protect two distinct rights and to target two distinct classes of devices. Subsection 1201(a)(2) is designed to protect access to a copyrighted work. Section 1201(b) is designed to protect the traditional copyright rights of the copyright owner. As a consequence, subsection 1201(a)(2) prohibits devices primarily designed to circumvent effective technological measures that limit access to a work. Subsection 1201(b), on the other hand, prohibits devices primarily designed to circumvent effective technological protection measures that limit the ability of the copyrighted work to be copied, or otherwise protect the copyright rights of the owner of the copyrighted work.

Notably, "Congress did *not* ban the act of circumventing the use restrictions" on devices designed to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV16-04099 JAK (KSx) | | Date | April 20, 2017 |
|---|---|---|---|---|
| Title | Max Hattler v. Lorin Ashton, et al. | | | |

circumvent technological measures that impose limitations on the use of protected works. *Elcom*, 203 F. Supp. 2d at 1120 (emphasis in original).

At the hearing, Plaintiff's counsel argued that the Ninth Circuit had reached a contrary conclusion in *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928 (9th Cir. 2010), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011). In particular, he argued that *MDY* held that, if an online measure restricts access to the underlying files and data, and thereby the ability of the viewer to copy that data, then circumventing that measure would violate § 1201. However, *MDY* distinguished violations of § 1201(a) and § 1201(b):

> Section 1201(b)(1)'s prohibition is thus aimed at circumventions of measures that protect the copyright itself: it entitles copyright owners to protect their existing exclusive rights under the Copyright Act. Those exclusive rights are reproduction, distribution, public performance, public display, and creation of derivative works

*Id.* at 944. In contrast, § 1201(a) "extend[s] a new form of protection, i.e., the right to prevent circumvention of access controls, broadly to works protected under Title 17, i.e., copyrighted works." *Id.* at 945. *MDY* explained that there was no need for the DMCA to "prohibit circumvention itself because such conduct was already outlawed as copyright infringement." *Id.* Indeed, Defendants have not contested here that Plaintiff has stated a claim for copyright infringement.

For these reasons, the statutory structure, appellate precedent and legislative history of the DMCA all support the same conclusion. Thus, where § 1201(a)(1) refers to technological measure that control "access" to a protected work, that section should be interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying.

For the foregoing reasons, Plaintiff cannot state a claim for relief under § 1201(a)(1). Further, because it is uncontested that the Works are accessible to the public on many websites, any effort to amend the SAC would be futile.

**IV.     Conclusion**

For the reasons stated in this Order, the Motion is **GRANTED** without leave to amend as to the alleged violations of 17 U.S.C. §§ 1201(a)(1) and 1202(a). Any amended Complaint shall be filed on or before May 4, 2017.

**IT IS SO ORDERED.**

|   |   : |
|---|---|
| Initials of Preparer | ak |